IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EEN YOUNG, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 1:16-cv-104 |
| | § | |
| LUMINANT MINING COMPANY, | § | |
| JOEL CLUFF, and | § | |
| MICHAEL MORRISS | § | |
| Defendants. | § | |

## PLAINTIFF, EEN YOUNG'S, ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Een Young (Plaintiff or "Ms. Young"), complaining of and about Luminant Mining Company, LLC ("Luminant"), Joel Cluff ("Cluff"), individually, and Michael Morris ("Morriss"), hereinafter collectively referred to as Defendants, and for cause of action shows unto the Court the following:

### I.    PARTIES AND SERVICE

1.    Plaintiff Een Young, is a citizen of the United States and the State of Texas and resides in Travis County, Texas.

2.    Defendant Luminant Mining Company, LLC is a for-profit corporation with its principal place of business at 1601 Bryan St., Dallas, Dallas County, Texas 75201-3430. It may be served by serving its registered agent, as found on the Secretary of State website, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

3.    Joel Cluff is an individual and is a Reliability Consultant at Luminant. Defendant Cluff was Ms. Young's former supervisor at Luminant's Three Oaks Mine job site. He works and

resides in Bastrop County, Texas, which is located in the Western District of Texas, Austin Division.  He may be served with Citation at his address of 134 Vicksburg Loop, Bastrop County, Texas 78621, or wherever he may be found.  At all relevant times, Mr. Cluff acted and acts directly in the interests of Luminant in relation to its employees. Thus, he was and is an employer of the Plaintiff within the meaning as defined by the FMLA in 29 U.S.C. § 2611(4) and is jointly, severally, and individually liable along with Luminant and Morriss.

4.      Michael Morriss is an individual and is the Director at Luminant.  Defendant Morris was Ms. Young's former supervisor at Luminant's Three Oaks Mine job site.  He works in Bastrop County and resides in Williamson County, Texas, which are both located in the Western District of Texas, Austin Division.  He may be served with Citation at his address of 2805 San Milan Pass, Round Rock, TX 78665, or wherever he may be found.  At all relevant times, Mr. Morriss acted and acts directly in the interests of Luminant in relation to its employees. Thus, he was and is an employer of the Plaintiff within the meaning as defined by the FMLA in 29 U.S.C. § 2611(4) and is jointly, severally, and individually liable along with Luminant and Cluff.

## II.      JURISDICTION AND VENUE

5.      This action arises under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990 (ADA), the Family Medical Leave Act ("FMLA"), and U.S.C. § 1981.  Venue is proper in the Western District of Texas, Austin Division, because Defendants' violations of the above-referenced statutes took place and continue to take place within this District; the impact of the violations on Plaintiff occurred in this District; Plaintiff resides in this District; and Defendant operates in this district.

## III.      NATURE OF ACTION

6.      This is an action under: (1) Title VII of the Civil Rights Act of 1964, as amended,

to correct unlawful employment practices on the basis of sex, race, national origin, and retaliation unlawful employment practices; (2) Title 42 U.S.C. Section 12101 *et. seq.* to correct unlawful employment practices on the basis of disability; (3) 29 U.S.C. § 2615 *et. seq.* (the Family Medical Leave Act) to correct interference for taking protected leave; and (4) 42 U.S.C. § 1981 correct unlawful employment practices on the basis of race.

## IV.    CONDITIONS PRECEDENT

7.    All conditions precedent to jurisdiction have occurred or been complied with:  a charge of discrimination was filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## V.    FACTUAL BACKGROUND

8.    On October 4, 2010, Ms. Young began working at Luminant Mining in the newly rebranded Operational Excellence (OE) group. Due to the deregulation of the energy market in Texas, it became imperative that Luminant improve their management of people and business processes in order to remain competitive and profitable. To expand the reach and quality of the original Operating Systems (OS) internal customer support group, Jonathan Biddy hired a group of employees from outside of Luminant Mining. Everyone had experience in Human Performance Improvement (HPI), Quality Assurance and Quality Control (QA/QC), leadership, training, consulting, and reliability that differed from the other members on the team that had experience in mining; creating a well diverse and effective team.

9.    After federal mining training, Ms. Young reported to her assigned site, Three Oaks Mine, where Ms. Young had interviewed with the site director, Jerry Poland, and her teammate,

Joel Cluff. Ms. Young was immediately assigned to work on a newly formed team tasked with developing and implementing a Mining Reliability Centered Maintenance (RCM) program. Management decided that the Fuel Delivery System (FDS) at Three Oaks was the most critical asset within the mining fleet, and Ms. Young was instructed to "dotted-line" report to Paul Hamilton (RCM Manager), Darryl Davidson (FDS Superintendent), and because the team supported the entire mining fleet, Joel Cluff was promoted to lead OE for the site, and would provide Ms. Young with mining guidance and support.

### A.  Senior Leadership's Failure to Protect

10.  Mike Williams, Steve Kopenitz and Gerry Pearson, all looked Ms. Young in her eyes, shook her hand and promised to protect, support, and invest in her career and professional growth. They asked Ms. Young to use her skill set and experience to help them foster change, develop and implement a Reliability Centered Maintenance (RCM) program, champion Human Performance Improvement (HPI), and improve the safety of the mining fleet.

11.  Ms. Young sacrificed, put in the hard work, fulfilled her commitment, and they did not protect Ms. Young.

12.  Instead of the usual pushback from designing and implementing change, Ms. Young was told that the challenges Ms. Young experienced there were because Ms. Young was "so naturally different" from their model of a leader. Ms. Young was advised that there would be nothing Ms. Young could really do that would be accepted by Luminant.

13.  From the very beginning of her employment, Ms. Young was treated differently from other similarly situated employees.  Ms. Young was told that the root of her issues at work was that leadership could not accept information and ideas from a black female.

14.  Ms. Young found herself being stereotyped, labeled, bullied, isolated, harassed, and

discriminated against by her co-workers and superiors.

15.     Comments were made about Ms. Young's hair, which she chose to wear in a natural style, as an "afro" and "clown's hair."

16.     When Ms. Young wore a shirt supporting her children's elementary school, she was asked if it was a "Black Power" shirt.

## B. Complaint to HR

17.     After reaching out several times to Jonathan Lewis, the site Human Resources Manager, he escalated her concerns to the corporate Employee Relations team. Jonathan told Ms. Young that he was unable to help Ms. Young previously because site leadership did not listen to, or respect him or his position, and bullied him, too. An extensive investigation in the spring/summer of 2014 was conducted by Mike Todd, Corporate Employee Relations Manager, and Ms. Young was informed that several of her claims had been verified and as a result, changes were instituted.

18.     Ms. Young was assigned to report to the site director, Defendant Michael Morriss, in order to protect Ms. Young and provide short-term stability and support. Instead of providing stability, Ms. Young was retaliated against, and subjected to an increasingly unfair, biased, discriminatory, and harassing work environment.

19.     She was also not provided with the necessary information or help to complete her new projects.  In fact, a majority of Ms. Young's work was taken away from her following her complaint.

## C. FMLA Background

20.     Also during her employment with Luminant, Ms. Young needed to take FMLA related to her mother's treatment of Stage 3 lung cancer, and subsequently for personal reasons.

21.     Luminant has a third-party administrator that handles FMLA leave.

22.     Up to and until Ms. Young had to report to Defendant Joel Cluff, and then Defendant Morriss, she never had a problem with her FMLA requests for leave.

23.     In the summer of 2014, in accordance with her FMLA rights, Ms. Young took various days off to take her mother for doctor appointments and for personal reasons.

24.     Ms. Young received increasingly hostile treatment from Defendant Cluff regarding her use of FMLA.  In August 2014, he requested that she indicate whether she was using FMLA for herself, her mother, or for her children when she calendared appointments for which she was going to be out of the office.

25.     Due to the nature of her mother's illness, and the importance of time to effective treatment, Ms. Young was not always able to give substantial notice of her appointments. In August 2014, Defendant Cluff had a meeting with Ms. Young where he told her that: (1) she had an obligation to work; (2) that mothers know the obligations of having days off; and (3) that he is not getting compensated for managing her even though everyone knew she was difficult to manage.

26.     Defendant Cluff also forbade Ms. Young, a salaried employee, from coming in early or staying late to complete her work during the time she was using FMLA.

27.     After Ms. Young's discrimination complaint proved viable, and she was transferred to Defendant Morriss, she still continued to be harassed over her use of FMLA.

28.     At the end of December 2014, due to the stress of her hostile working environment, Ms. Young suffered from serious mental and physical illnesses which prevented her from coming

to work.  Ms. Young provided notice as described in the handbook.

29.     Ms. Young had to take FMLA leave for her own serious medical conditions.

30.     On January 20th, 2015, instead of support and understanding, Michael Morriss went as far as to place Ms. Young in Step 3 Discipline while Ms. Young was out sick and on FMLA leave. Mr. Morriss claimed that Ms. Young did not provide him with the known dates Ms. Young would be on approved FMLA leave, related to her mother's treatment of Stage 3 lung cancer.  Ms. Young had informed Defendant Morris twice – in person - about the appointment, calendared the appointment on her calendar to which he had access, and set-up an out-of-office notification regarding her absence due to the appointment.

31.     Then, a few weeks later, Mr. Morriss informed Ms. Young that she had been terminated for failing to return back from her FMLA leave.  However, Ms. Young's leave had been extended and approved by the third-party administrator.  Mr. Morriss had to reluctantly retract Ms. Young's termination.  He then set-up further requirements and notifications for Ms. Young to comply regarding her FMLA leave, which was supposed to be the responsibility of the third-party administrator to provide this information.

32.     Due to her serious medical condition, Ms. Young had to go on Short Term Disability.  It was then converted to Long Term Disability and she was administratively discharged in or around the spring of 2015.

33.     During her four years with Luminant, Ms. Young has had her work dismissed and set-aside, only to have it later adopted and used by others. Several members of management and co-workers have benefitted from works that she created, developed, re-designed, corrected and updated – meanwhile, her involvement was marginalized, not recognized, and never reflected in her annual reviews.

34.     Several longtime employees of Luminant told Ms. Young (and some even reported it to the site Mine Manager) that the only reason she faced the characterizations and unfair treatment was because she was a female, she was black, and she was not docile.  Her harassment only continued to grow based on her care-taker responsibilities and protected leave.

35.     Ms. Young's harassment became so severe that she suffered mental and physical ailments from the hostile work environment she was subjected to on a daily basis.  Ms. Young eventually had to take short-term disability and then long-term disability due to her mental and physical condition.

## VI.    CLAIMS FOR RELIEF

### CLAIM ONE: TITLE VII – DISCRIMINATION

36.     Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

37.     Ms. Young was an employee within the meaning of Title VII and belongs to a class protected under the statute.  Ms. Young was discriminated against because of her race, color, sex/gender, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

38.     Defendant Luminant is an employer within the meaning of Title VII.

39.     Title VII of the Civil Rights Act of 1964 states, in pertinent part, that, "(a) It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of

employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

40.    Defendant Luminant violated Title VII by intentionally discriminating against Plaintiff because of her race, sex/gender, and national origin by treating similarly situated employees more favorably.

## CLAIM TWO: TITLE VII – HOSTILE WORK ENVIRONMENT

41.    Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

42.    Ms. Young was an employee within the meaning of Title VII and belongs to a class protected under the statute.  Ms. Young was discriminated against because of her race, color, sex/gender, and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e2(a)(1).

43.    Defendant Luminant is an employer within the meaning of Title VII.

44.    Ms. Young was subject to insults, jokes, and other verbal comments regarding her race, color, sex/gender, and national origin.  The conduct was unwelcome and was sufficiently severe and/or pervasive to alter the conditions of the Ms. Young's employment and a racially and gender/sexually abusive and/or hostile work environment that affected her terms, condition and/or privilege of employment.

## CLAIM THREE: TITLE VII – RETALIATION

45.    Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

46.    Ms. Young was an employee within the meaning of Title VII Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000 *et. seq.*

47.    Defendant Luminant is an employer within the meaning of Title VII.

48.    Title VII prohibits employers from retaliating against employees based on an employee's opposition to employment discrimination or complaint of discrimination. See 42 U.S.C. § 2000e-3(a).

49.    Ms. Young engaged in protected activity by complaining about her discriminatory and hostile work environment. Defendant Luminant retaliated against her, among other things, by subjecting her to more stringent requirements than other employees regarding policies, and taking away Ms. Young's resources and functional ability to do her job. She was also more carefully scrutinized than other employees. Additionally, Ms. Young had the majority of her work responsibilities taken away from her.

## CLAIM FOUR: SECTION 1981 (CIVIL RIGHTS ACT OF 1866)

50.    Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

51.    Ms. Young also brings a claim pursuant to Section 1981 of the Civil Rights Act of 1866 which provides all persons with the same right to "make and enforce contracts… as is enjoyed by white citizens." The Civil Rights Act of 1991 makes Section 1981 applicable to all elements of the employment relationship.

52.    Ms. Young was entitled to the same protection against racial discrimination in employment under Section 1981 as nonwhites. Ms. Young was denied this protection by Defendant Luminant.

## CLAIM FIVE: AMERICANS WITH DISABILITY ACT

53.    Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

54.    Defendant Luminant intentionally engaged in unlawful employment practices involving Plaintiff because of her disability.

55.    Defendant Luminant intentionally discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment in violation of 42 U.S.C. Section 12112. The effect of these practices has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee.

56.    At all material times, Plaintiff was able to perform the essential functions of her position with accommodation. Plaintiff has a disability, has a record of a disability and is regarded as having a disability which substantially limits at least one major life activity. Plaintiff was discriminated against on the basis of her disability, record of a disability, and perception of having a disability.

57.    Defendant Luminant violated the ADA by intentionally discriminating against Plaintiff because of her disability by treating similarly situated employees more favorably. Plaintiff had to follow more stringent requirements for taking leave in connection with her disability than other employees. Plaintiff was subjected to different terms and conditions regarding taking leave than other similarly situated employees in that she had to give additional information and notice about her disability that other employees did not have to provide. Plaintiff received disciplinary actions for being out on leave for her disability that was pretextual.

58.    Ms. Young's disability was a determining or motivating factor in Defendant Luminant's employment decisions as to Plaintiff.

59.    Plaintiff alleges that Defendant Luminant discriminated against Plaintiff on the basis of disability with malice or with reckless indifference to the protected rights of Plaintiff.

### CLAIM SIX: FAMILY MEDICAL LEAVE ACT

60.    Plaintiff incorporates by reference the allegations contained above as if those allegations were set forth verbatim.

61.    During the time that Plaintiff alleges that she suffered interference with her FMLA leave, she was an eligible employee as defined by the FMLA in 29 U.S.C. § 2611(2).

62.    Plaintiff was entitled to medical leave for her mother's serious health condition as provided for in the FMLA in 29 U.S.C. § 2612(a)(1)(C).

63.    Plaintiff was entitled to medical leave for her serious health condition as provided for in the FMLA in 29 U.S.C. § 2612(a)(1)(D).

64.    Defendants had notice of Ms. Young's intention to take FMLA leave.

65.    Defendants illegally denied and/or interfered with Ms. Young's right to take leave under the FMLA.

## VII.    DAMAGES

66.    As a result of Defendants unlawful conduct, Plaintiff has suffered economic and actual damages, including past and future lost income, back wages, interest on back pay and front pay, future wages or front pay, lost earnings in the past and future, lost benefits under the employment relationship, employment benefits in the past, and employment benefits in the future. Plaintiff has also incurred other actual damages as a result of Defendants unlawful conduct, including but not limited to past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, and other pecuniary and non-pecuniary losses.

67.    Defendants have intentionally engaged in an unlawful employment practice. Plaintiff additionally brings suit for compensatory damages, including emotional pain and suffering, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and

reputation, injury to credit standing, job search expenses, lost earning capacity in the past and future, and other pecuniary and non-pecuniary losses.

## VIII.    LIQUIDATED DAMAGES

68.    As a result of Defendants willful violations of the FMLA, Plaintiff requests that she be awarded all damages to which she is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as result of the violation, plus interest.  In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable compensation described above.

## IX.    ATTORNEYS' FEES AND EXPERT  FEES

69.    A prevailing party may recover reasonable attorneys' and experts' fees under Title VII, the ADA, and the FMLA.  Plaintiff seeks all reasonable and necessary attorneys' fees in this case from Defendants, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees.

## X.    JURY DEMAND

70.    Pursuant to Federal Rules of Civil Procedure 5(d) and 38(a), (b) and (c), Plaintiff hereby demands a trial by jury of each and all of its claims, to the extent permitted by applicable and controlling substantive law.  See *Mesa Petroleum Co. v. Conigle,* 629 F.2d 1022, 1028 (5th Cir. 1980). and is paying the appropriate jury fee contemporaneously with the filing of this Complaint.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Een Young, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the

jurisdictional limits of the Court; exemplary, punitive and liquidated damages, together with interest as allowed by law; costs of court; pre and post judgment interest, and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Dated: February 2, 2016

Respectfully submitted,

/s/ *Raven R. Applebaum*
Raven R. Applebaum
Texas State Bar No. 24043644
The Law Office of Raven Applebaum
602 Riley Trail
Cedar Park, Texas 78613
(512) 699-0494
(281)840-5699 (facsimile)
raven@applebaumlawoffice.com

**ATTORNEY FOR PLAINTIFF,
EEN YOUNG**